Aria Vatankhah   State Bar No. 269999
Aria Law Group PLC
260 Sheridan Avenue, Suite 200
Palo Alto, CA 94306
Email: avatankhah@arialaw.com
Phone: (650) 391-9630
Fax:     (650) 391-9615

Attorney for Plaintiff,
SAEID MOHEBBI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Saeid Mohebbi,            Plaintiff,<br><br>     vs.<br><br>Mahnaz Khazen, Michael Shadman, Violet Parvarandeh, Pirooz Parvarandeh, Stacey Conti, U.S. Immigration Investment Center LLC a Delaware Limited Corporation, USIIC LLP a Delaware Limited Liability Partnership, USIIC I LP a Delaware Limited Partnership, and Does 1 through 100, Inclusive.<br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: CV13-03044<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## Contents

I. INTRODUCTION .................................................................................. 6

II. PROCEDURAL HISTORY .................................................................. 6

III. THE STANDARDS THAT ARE APPLICABLE TO THE INSTANT MOTION.................. 6

IV. FACTUAL BACKGROUND................................................................ 7

    **A.**     **In connection with Fraud in the execution and inducement of the "engagement agreement dated July 22, 2012", Plaintiff, in paragraphs 284 through 323, alleged misrepresentations and fraudulent concealment attributable to USIIC, Mahnaz Khazen and Michael Shadman.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **B.**     **In Connection with the partnership agreement dated October 3, 2012, Plaintiff, in paragraphs 324 through 367, alleged misrepresentations and fraudulent concealment attributable to Mahnaz Khazen, Pirooz Parvarandeh, Violet Parvarandeh and USIIC.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**C.    In Connection with the FULLY EXECUTED agreement dated December 18, 2012 written in Farsi Language, Plaintiff alleged misrepresentations and fraudulent concealment attributable to Mahnaz Khazen and Violet Parvarandeh.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**D.    In paragraphs 73 through 84, Plaintiff alleged federal money laundering, 18 U.S.C. §1957, federal mail fraud [18 U.S.C. §1341] and federal wire fraud [18 U.S.C. §1343] premised RICO claims attributable to Mahnaz Khazen and Michael Shadman.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

A. The RICO Claims are Sufficiently Pled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. Plaintiff Has Pled Violations of §§ 5(a) and 5(c) of the Securities Act . . . . . . . . . . . . . . . . . . . . . . 15

C. Plaintiff Has Pled Violations of Section 10(b) Of The Exchange Act And Rule 10b-5 Against Defendants With Particularity As Required By Rule 9(b) And The PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D. Plaintiff Has Adequately Pled Advisor Act Section 203(a) Violations . . . . . . . . . . . . . . . . . . . . . . . 20

E. Plaintiff Has Adequately Pled the Cause of Action for California Corporations Code § 25110 Violation . . . . . . . . . . 21

F. Plaintiff Has Sufficiently Pled the Cause of Action for California Corporations Code § 25401 Violations . . . . . . . . . 22

G. Plaintiff has pled the Ninth, Tenth, Eleventh and Twelfth causes of action (the "Fraud Causes of Action") with particularity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

  a.  Plaintiff Has Pled the Ninth Cause of Action for Fraud in the Inducement with Particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

  b.  Plaintiff Has Pled the Tenth Cause of Action for Fraud in the Execution with Particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

  c.  Plaintiff Has adequately Pled the Eleventh Cause of Action for Fraud in Connection with the Investment Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

  d.  Plaintiff Has Adequately Pled the Twelfth Cause of Action for Fraud in Connection with the December 18, 2012 Agreement . . . . . . . . . . . . . . . . . . . . . . . . 25

H. Plaintiff Has Sufficiently Pled the Cause of Action for Lanham Act Violations . . . . . . . . . . . . . . . . . . . . . . 26

I. Plaintiff Has Adequately Pled the Fifteenth, Sixteenth and Seventeenth Causes of Action for Breach of Contract. . . . . . 27

   1. Breach of the Engagement Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

   2. Breach of the Partnership Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

   3. Breach of the December 18, 2012 Agreement Written in Farsi . . . . . . . . . . . . . . . . . . 27

J. Plaintiff Has Pled Adequately the Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing . . . 27

J. Plaintiff Has Adequately Pled the Cause of Action for California Business and Professions Code Sections 17200 and 17500

Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

K. Plaintiff Has Pled Adequately the Cause of Action for Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

L. PLAINTIFF HAS PLED ADEQUATELY CAUSE OF ACTION RESCISSION . . . . . . . . . . . . . . . . . . . . . . . . 28

M. Plaintiff Has Adequately Cause of Action for Accounting and Constructive Trust . . . . . . . . . . . . . . . . . . . . . . . 28

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## Federal Cases

Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-69 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Parks School of Business, Inc. v. Symington, 51 F. 3d 1480, 1484 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ponce v. S.E.C., 345 F.3d 722, 729 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

SEC v. M&A West, Inc., 538 F.3d 1043, 1050 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Swartz v. KPMG LLP 476 F.3d 756, 765 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

## State Cases

Ford v. Shearson Lehman American Express, Inc., 180 Cal. App. 3d 1011, 1028 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 21

Hackethal v. Nat'l Cas. Co., (1987) 189 Cal. App. 3d 1102, 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lazar v. Super. Ct., (1996) 12 Cal. 4th 631, 638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Michaelian v. State Comp. Ins. Fund, 50 Cal.App.4th 1093, 1114, 58 Cal.Rptr.2d 133 (1996). . . . . . . . . . . . . . . . . . . . . . . 26

People v. Simon, 9 Cal. 4th 493, 499 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rice v. Dean Witter Reynolds, Inc., 235 Cal. App. 3d 1016, 1025 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rosenthal, 14 Cal. 4th at 415-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Teselle v. McLoughlin, 173 Cal.App.4th 156, 179, 92 Cal.Rptr.3d 696 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Verdier v. Super. Ct. in and for City & County of San Francisco, 88 Cal.App.2d 527, 530, 199 P.2d 325 (1948) . . . . . . . . 26

## Federal Statutes

15 U.S.C. § 77e(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 78u 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 80b-2(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. §1341] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. §1957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Advisor Act Section 203(a)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Federal Rules of Civil Procedure ("Rule 12(b)(6") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 27

FRCP 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Private Securities Litigation Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Racketeer Influenced and Corrupt Organizations Act (RICO) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rule 9(b) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Securities Exchange Act of 1934 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

The Lanham Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## State Statutes

California Business and Professions Code Section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

California Business and Professions Code Section 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

California Code of Civil Procedure § 1856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**California Corporations Code § 25110** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**California Corporations Code § 25401** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

Defendants Mahnaz Khazen, Michael Shadman, Violet Parvarandeh, Pirooz Parvarandeh, Stacey Conti, U.S. Immigration Investment Center LLC, USIIC LLP, and USIIC I LP, (collectively "Moving Defendants") have brought the instant motion to dismiss the Plaintiff's Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6").

Moving Defendants assert that the allegations set forth in the SAC are insufficiently pled to constitute any other valid cause of action against them. With this in mind, Plaintiff will indicate why the SAC is pled with sufficient particularity.

To the extent this Court might rule that any allegation in the SAC as to any of the Moving Defendants has not been pleaded with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), Plaintiff requests further leave to amend. "[D]ismissals under Rule 9(b) are 'functionally equivalent' to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable." Swartz v. KPMG LLP 476 F.3d 756, 765 (2007).

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on July 2, 2013. (ECF 1) Defendants filed a Motion to Dismiss on August 7, 2013. (ECF 19) Plaintiff elected to file a First Amended Complaint on August 28, 2013, naming the same Defendants. (ECF 29) Defendants filed a second Motion to Dismiss ("Motion") on September 11, 2013. (ECF 34) Plaintiff filed an Opposition on September 25, 2013 (ECF 37) Defendants replied on October 2, 2013. (ECF 39)

On June 12, 2014 Moving Defendants' Motion to Dismiss the FAC was heard. On June 23, 2014 the Court Granted in Part and Denied in Part the Motion to Dismiss the FAC. The two causes of action that the Court denied Moving Defendants' Motion to Dismiss were Plaintiff's Conversion and Cal. Bus. Prof. Code Section 17500 claims.

## III. THE STANDARDS THAT ARE APPLICABLE TO THE INSTANT MOTION.

When ruling upon a Rule 12(b)(6) motion to dismiss for failure to plead a claim on which relief can be granted, the court must accept all factual allegations in the complaint as true. Tellabs, at

322. Where the claim seeks relief for fraud, the plaintiff must plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1543 (9th Cir.1994) (en banc).

When ruling on Rule 12(b)(6) motions "courts must consider the complaint in its entirety, as well as other sources . . . , in particular . . . matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).In ruling upon a Rule 12(b)(6) motion to dismiss claims alleging violations of Section 10(b), even though such complaint is subject to the heightened pleading standards required by Rule 9(b) and the PSLRA, "allegations must be considered collectively," Tellabs, supra, at 325, and "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." Id. at 326.

## IV. FACTUAL BACKGROUND

Defendants' motion must be denied because Plaintiff's Second Amended Complaint ("SAC") passes the standards for dismissal set forth in Rule 12(b)(6). SAC alleges twenty two (22) claims, all supported by well-pleaded factual allegations (not mere legal conclusions), and all plausibly suggestive of a claim. Although Defendants would like to see all 22 causes of actions dismissed because they purportedly are insufficiently plead, SAC was pleaded with sufficient particularity to withstand all challenges.

Plaintiff's amended complaint complies with FRCP 8(a) and sufficiently particularizes federal RICO and fraud predicate acts claims under FRCP 9(b). Plaintiff has alleged fraudulent misrepresentations and omissions regarding the "Who, What, When, Where and How" attributable to USIIC, Mahnaz Khazen, Michael Shadman, Pirooz Parvarandeh and Violet Parvarandeh.

    A.   **In connection with Fraud in the execution and inducement of the "engagement agreement dated July 22, 2012", Plaintiff, in paragraphs 284 through 323, alleged misrepresentations and fraudulent concealment attributable to USIIC, Mahnaz Khazen and Michael Shadman.**

In March 2012, Plaintiff was introduced to the USIIC website. This website included a video in Farsi language. In this video, Khazen the CEO of the USIIC stated as follows: "*The USIIC is the only EB-5 visa Regional Center with its foundation in Banking. By investing in our regional*

*center you will get substantial returns on your investment and obtain a green card for yourself and family.*" In April 2012, Khazen provided Plaintiff with USIIC promotional materials written in Farsi. In these materials, and the website, USIIC represented itself as a regional center and never mentioned that its application was pending. In April, 2012, Khazen falsely represented the USIIC as an approved regional center to Plaintiff. These oral statements were delivered in Farsi language. In Khazen's own words: "*The USIIC has been approved by USCIS as a regional center. If you invest 1 million dollars in our regional center, you can get green card for yourself and your family. Because the USIIC is a regional center with its foundation in banking, you can get a loan from your own money and purchase a home*." On July 22, 2012, Khazen and Shadman, in Dubai at the Royal Investment Bank LTD (RIBL), provided Plaintiff with documents that represented that USIIC had an "alliance" with RIBL and that USIIC was running an EB-5 green card program with "its foundation in banking." Also in this meeting, Khazen and Shadman provided Plaintiff with USIIC promotional materials in Farsi stating: "*USIIC is the only EB-5 Regional Center organization with its foundation in United States banking.*" Khazen and Shadman presented Plaintiff with the "Engagement Agreement" dated July 22, 2012", written in English. Khazen explained the agreement in Farsi. At no point during this explanation did she mention the fact that USIIC's Regional Center application was pending. In Khazen's own words: "*This agreement says that you agree to pay $59,000.00 as an administrative fee for the Services we provide to you in connection with entering you into our USIIC regional center and obtaining an OFAC license.*" Khazen was bound to disclose the status of the regional center application because she had made contrary representations about the USIIC on USIIC's website, promotional materials, and entire previous negotiations, where they knew them to be false. Khazen concealed the true facts because she knew that if Plaintiff was aware that USIIC's Regional Center application was pending, Plaintiff would not have signed the engagement agreement.

B. **In Connection with the partnership agreement dated October 3, 2012, Plaintiff, in paragraphs 324 through 367, alleged misrepresentations and fraudulent concealment attributable to Mahnaz Khazen, Pirooz Parvarandeh, Violet Parvarandeh and USIIC.**

The USIIC's website and promotional materials written in Farsi and English represented the U.S. Immigration Investment Center LLC as the only EB-5 visa regional center organization with its foundation in United States banking. The USIIC offered investors with an investment opportunity in **its regional centers** while achieving the fastest path to the U.S. residency and citizenship. On the website and promotional materials, Defendants stated: "*Applicant signs USIIC Limited Partnership Agreement and USIIC transfers investment funds from holding account to USIIC's Partnership account. The Limited Partnership has been created specifically for each EB-5 Regional Center project.*"

On September 20, 2012, in the Fragomen Immigration Law Office in Irvine, California, Plaintiff inquired about his EB-5 visa application, the status of the regional center, and the nature of his investment. During this meeting, Khazen and Maryam Karimaneh translated for Plaintiff. Khazen assured Plaintiff that his money had been invested in a bank through USIIC Regional Center and his EB-5 visa application has been submitted to the USCIS. Further, Plaintiff asked to see documentation of this transaction. Khazen assured Plaintiff that his investment was safe and she told him that she would provide Plaintiff with a document showing that he was a 50% owner of the regional center. Khazen told Plaintiff: "*Your money is safe and has been invested in USIIC Regional Center. As repeatedly previously explained, you need to sign a partnership agreement which is one of the steps of the EB-5 visa process. I have prepared an agreement. We have to sign this agreement which will verify that we have transferred 50% of USIIC Regional Center and you will be 50% owner of the Regional Center.*" Khazen continued: "*We have submitted your application to the USCIS. Your money was short and I had to compensate for the shortness of funds.*" Khazen also continued: "*Now, the USCIS has requested for further evidence to support the EB-5 visa investment requirement. With signing the partnership agreement, we can prove to the USCIS that you have invested in the USIIC Regional Center and complied with that requirement.*"

The statements made by Khazen were materially false and misleading and were made with intent to defraud because the agreement did not grant Plaintiff 50% of the allegedly USIIC regional center but granted 50% of the USIIC I LP. She knew that the statements were not true because

the USIIC had not received approval as a Regional Center, so there was no way for Plaintiff to receive a green card through USIIC. She knew that signing the agreement would not qualify Plaintiff for EB-5 visa because the <u>USCIS requires the investor either invests in an approved regional center or in a new commercial enterprise which creates or preserves at least 10 full-time jobs for qualifying U.S. workers within two years</u>. The statements made by Khazen were materially false and misleading and were made with intent to defraud because Plaintiff's investment fund already had been used in purchasing Tri-Valley Bank shares and signing the agreement was just a cover-up for their wrong doings. (SAC ¶ 170) The statements made by Khazen were materially false and misleading and were made with intent to defraud because she had not submitted Plaintiff's EB-5 Visa application to the USCIS and had never received any correspondence from USCIS in connection with Plaintiff's EB-5 visa application.

On or about September 22, 2012, Plaintiff met with Violet Parvarandeh and Pirooz Parvarandeh. During the meeting, both Pirooz and Violet Parvarandeh reassured Plaintiff that his funds had been invested into the USIIC regional center. In Pirooz' own words: "*We have a good reputation in this area and we won't destroy it just for $1,000,000.00. Your money is safe. The USIIC Regional Center is a legitimate entity which has been purchasing community banks' shares.*" The statements made by Pirooz Parvarandeh were materially false and misleading and were made with intent to defraud because the USIIC had not received approval as a Regional Center. The statements made by Pirooz Parvarandeh were materially false and misleading and were made with intent to defraud because Plaintiff's investment fund already had been used in purchasing Tri-Valley Bank shares not a regional center.

Violet told Plaintiff: "*We, ourselves, have invested in the USIIC Regional Center; if it was not safe we would have not invested in it. Your money is safe; you have invested in a legitimate regional center which in turn has invested in Tri-Valley Bank. For sure, you will obtain the permanent residency of the US and also your investment will grow soon and we will become one of the largest shareholders of distressed banks in the U.S.*"

On or about September 28, 2012, Violet Parvarandeh referred Plaintiff to step 5 of the EB-5 visa process described in Farsi promotional materials and told him that a document had been prepared

for Plaintiff to sign. Violet Parvarandeh told him that if he signed this document, he would receive a 50% stake in the banks that USIIC had invested in. In Violet's own words: "*We have prepared an agreement which shows you have invested in the USIIC regional Center and you are the 50% owner of the regional center.*" Violet also continued: "*You need to sign the document for the purpose of your EB-5 visa application.*"

The statements made by Violet Parvarandeh were materially false and misleading and were made with intent to defraud because the agreement did not grant Plaintiff 50% of the allegedly USIIC regional center but granted 50% ownership of the USIIC I LP. She knew that the statements were not true because the USIIC had not received approval as a Regional Center, so there was no way for Plaintiff to receive a green card through USIIC. She knew that the signing the agreement would not qualify Plaintiff for EB-5 visa because the USCIS requires the investor either invests in an approved regional center or in a new commercial enterprise which creates or preserves at least 10 full-time jobs for qualifying U.S. workers within two years. The statements made by Violet were materially false and misleading and were made with intent to defraud because Plaintiff's investment fund already had been used in purchasing Tri-Valley Bank shares and signing the agreement was just a cover-up for their wrong doings.

On October 3, 2012, Khazen presented Plaintiff with the Partnership agreement and again referred him to the step 5 of the Farsi promotional materials and told him: "*This is the agreement we talked about. This suffices the investment requirement of your EB-5 Visa application. This proves to the USCIS that you have invested in our Regional Center.*" The entire document was written in English. Although they knew Plaintiff did not know English, they did not provide a translated version of the document.

Multiple representations within the agreement were materially false and misleading and made with specific intent to defraud. This document has 6 pages. It is very clear that Plaintiff has signed all the pages except page 4. On page 4, Defendant, Khazen, has completed the sections that required information about Plaintiff. On this page, Khazen fraudulently marked that Plaintiff has had advice concerning this investment from, or that he was, a qualified professional, such as an attorney, accountant, tax or investment advisor. Plaintiff never had advice concerning the

investment from a qualified professional, such as an attorney, accountant, tax or investment advisor.

The agreement starts with a false and misleading statement. The document states, "*USIIC-I LP has been formed by its General Partner, USIIC LLC, a Delaware corporation ("GP"), for the purpose of investing in or making loan(s) to the General partner, which in turn will invest in USIIC Bancorp.*" This statement was knowingly false and fraudulent. At the time of transaction, Defendants had already used Plaintiff's investment to buy Tri-Valley Bank stock for their own benefit. Defendants had purchased Tri-Valley Bank shares between August 22, 2012 and September 27, 2012, making the Partnership agreement obsolete and just a cover-up for their wrong doings USIIC Bancorp was never funded.

Between August 22, 2012 and September 27, 2012, Defendants had already converted and diverted Plaintiff's investment to buy Tri-Valley Bank shares for less than $0.35 per share. Defendants clearly admit in the Section 1 of the "Agreement Dated December 18, 2012" that they have used the Plaintiff's funds to purchase Tri-Valley bank shares, although they have misrepresented the value of each share.

### C. **In Connection with the FULLY EXECUTED agreement dated December 18, 2012 written in Farsi Language, Plaintiff alleged misrepresentations and fraudulent concealment attributable to Mahnaz Khazen and Violet Parvarandeh.**

Defendants could not provide required documents either for the regional center or a New Commercial Enterprise which Plaintiff had invested in. Plaintiff confronted Defendants. In response, Defendants told Plaintiff that they would pursue his EB-5 visa application under direct EB5 (New Commercial Enterprise) and this time they would write down the entire agreement in Farsi. However unknown to Plaintiff, he had to invest another $1,000,000.00 in order for him to be eligible for direct EB-5.

Exhibit 19 is the "Agreement Dated December 18, 2012" written in Farsi language. The exhibit includes 5 pages. The first 4 pages are the translation of the agreement from Farsi to English and the last page is the Farsi version of the agreement. The Farsi version of the agreement has been signed by Plaintiff and the CEO of the USIIC, Mahnaz Khazen. **This document is a fully executed agreement.** The document misrepresented that USIIC had purchased 2,285,750 shares

in Tri-Valley Bank for $2,285,750 ($1 per share). Unbeknownst to Plaintiff, this statement was materially false and misleading and was made with intent to defraud. Defendants had purchased the Tri-Valley Bank shares for less than $0.35 shares, between August 22, 2012 and September 27, 2012.

The document misrepresents that each share was valued at $1 however, during this time period shares in Tri-Valley Bank traded for an average value of $0.35. Exhibit 29 of SAC clearly shows that during August 1, 2012 through December 18, 2012, the value of the shares never exceeded 65 cents and it was only for 2 days. Furthermore, a letter dated August 2, 2012 from CEO of Tri-Valley Bank to its shareholders evidences that there was an offer of $0.35 per share. The letter indicates that the private placement was to close on August 31, 2012. (SAC EXHIBIT 25)

Paragraph 6 of the agreement was materially false and misleading and was made with intent to defraud. This paragraph states that USIIC LLC has formed the Bancorp in order to advance the process of Plaintiff's EB-5 visa application. This paragraph was false and misleading because Defendants knew that Plaintiff had to invest another $1,000,000.00 in the Bancorp in order for him to be eligible for direct EB-5. (SAC 49)

Defendants registered dba USIIC Bancorp with the Santa Clara County Clerk-Recorder's Office on October 22, 2012. (EXHIBIT 26) USIIC Bancorp is a dba of VAAM & ASSOCIATES, INC. VAAM & ASSOCIATES, INC. incorporated under the laws of the State of California in 1999. (EXHIBIT 27) Defendants registered dba USIIC Bancorp with intent to evade the U.S. Immigration law. U.S. immigration law requires an investment of $1,000,000.00 in a "new commercial enterprise," managed and controlled by the EB-5 visa applicant, however VAAM & ASSOCIATES, INC. was not a "new commercial enterprise."

Paragraph 10 of the agreement stated that Plaintiff would receive monthly reports detailing the status of his investment in Tri-Valley Bank. Paragraph 10 of the agreement was materially false and misleading and was made with intent to defraud. Defendants never intended to produce any report to Plaintiff and Plaintiff never received a single report from Defendants.

    D.  **In paragraphs 73 through 84, Plaintiff alleged federal money laundering, 18 U.S.C. §1957, federal mail fraud [18 U.S.C. §1341] and federal wire fraud [18 U.S.C. §1343] premised RICO claims attributable to Mahnaz Khazen and Michael Shadman.**

On July 7, 2012, Defendant KHAZEN, via email, sent the falsified letter dated June 22, 2012, to Plaintiff. The letter was materially false and misleading and was made with intent to defraud. Khazen knew that this was not true because they had not OBTAINED an approved "specific OFAC license." This letter was fabricated by Defendants with intent to push Plaintiff to transfer funds to Defendants, even though the necessary approval from OFAC had not yet been received. Defendants knowingly violated The Iranian Transactions Regulations, 31 CFR part 560 (the ''ITR''). Congress's inclusion of a violation of the IEEPA as a specified unlawful activity evidences that Congress contemplated that an individual could be charged with a violation of the IEEPA and money laundering.

Defendant, Shadman prepared and transmitted to Plaintiff an email written in Farsi dated August 6, 2012. Shadman in the email to Plaintiff stated: "you must transfer $1 million in order to be eligible for your OFAC license." Also, Shadman in the email stated that: "the deadline for obtaining a green card with the first group is August 15."

Shadman's statement was materially false and misleading and was made with intent to defraud because they had not received approval as a Regional Center, so there was no way for Plaintiff to receive a green card through USIIC let alone by August 15. Based on this email, Plaintiff transferred $600,000 to USIIC's alleged escrow account on August 16, 2012. Shadman knew that a specific OFAC license should have been obtained prior to transferring funds from Iran. Defendants knowingly violated The Iranian Transactions Regulations, 31 CFR part 560 (the ''ITR'').

## V. ARGUMENT

**A. The RICO Claims are Sufficiently Pled**

Plaintiff has adequately pled the causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), under 18 U.S.C. §§ 1961-1968. In Sections "MISREPRESENTATIONS," and "FACTS PERTAINING TO RICO," of the SAC, Plaintiff has laid out five elements of the civil violation of the RICO Act : "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that (5) causes injury to the plaintiff's business or property."

Plaintiff has pled facts sufficient, in paragraphs 214 through 218 of the SAC, to define the "enterprise" for purposes of the RICO violations. Plaintiff has demonstrated that Khazen-Shadman-Parvarandeh Criminal Enterprises (CE) consists of three Delaware corporations: U.S. Immigration Investment Center LLC, USIIC LLP and USIIC I LP directly controlled by Defendants Khazen, Pirooz Parvarandeh, Violet Parvarandeh and Shadman. The Criminal Enterprise is ongoing with an organizational, decision-making structure.

Plaintiff has sufficiently pled facts and defined the "common purpose" of enterprise as scheme to exploit a federal visa program as a means to defraud investors seeking strong returns and a legal path to U.S. residency. (SAC ¶¶ 25, 139, 227, 223, 374)

Plaintiff has sufficiently pled "racketeering activities" in Sections "MISREPRESENTATIONS," and "FACTS PERTAINING TO RICO" of the SAC. The Section "MISREPRESENTATIONS" spells out in details the "PREDICATE ACTS" including money laundering, mail, and wire fraud, committed by each Defendant. The Amended Complaint Sufficiently Alleges Predicate Acts of Racketeering Activity.

Plaintiff's federal money laundering [18 U.S.C. §1957], federal mail fraud [18 U.S.C. §1341] and federal wire fraud [18 U.S.C. §1343] premised RICO claims are sufficiently pleaded and comport with the strictures of FRCP 9(b).

As a direct and proximate result of above defendants' use of racketeering, plaintiff has suffered direct losses and damages in an amount in excess of $1,085,000.

**B. Plaintiff Has Pled Violations of §§ 5(a) and 5(c) of the Securities Act**

Section 5(a) of the Securities Act makes it a violation of federal law to "make use of any means or instruments of transportation or communication in interstate commerce or the mails to sell [an unregistered] security," or "to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a). Section 5(c), similarly, "prohibits unregistered offers to sell and buy unregistered securities." SEC v. M&A West, Inc., 538 F.3d 1043, 1050 (9th Cir. 2008) (citing 15 U.S.C. § 77e(c)) (emphasis in original).

Defendants were required to register the securities sold to Plaintiff BECAUSE the securities themselves were made generally available, via solicitation or advertising on USIIC's website and their promotional materials in Farsi and English language. Defendants on their website and promotional materials in paragraph 6 of the "step by step EB-5 process state: "USIIC transfers the escrow funds to the Limited Partnership bank account in the United States. The Limited Partnership has been created specifically for each EB-5 Regional Center project."(EXHIBIT 30) Defendants violated antifraud provisions of the federal securities laws in the information they provided to Plaintiff. On October 3, 2012, based on misrepresentations on website and promotional materials, Plaintiff signed the "Investment Questionnaire and Subscription Agreement for Private Placement Memorandum." Plaintiff believed that the document that he signed granted him a 50% stake in the USIIC Regional Center which in turn had been investing in a community bank. Plaintiff signed this agreement because misrepresentations led him to believe that signing the partnership agreement is part of the EB-5 visa process while unknown to him Defendants had already diverted and converted his investment funds for their own benefit. Unbeknownst to him this partnership agreement was just a cover-up for Defendants' illegal conversion.

**C. Plaintiff Has Pled Violations of Section 10(b) Of The Exchange Act And Rule 10b-5 Against Defendants With Particularity As Required By Rule 9(b) And The PSLRA**

Section 10b-5 bars any person from "us[ing] or employ[ing], in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). The elements of a claim pursuant Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 are "(1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 (2011). Pursuant to the requirements of the PSLRA, when pleading a material misrepresentation or omission of fact, the complaint must specify the reason or reasons why the statement is misleading, and, if an

allegation regarding the statement or omission is made on information and belief, must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u 4.

"The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." Tellabs, at 313 (citations omitted).

Notably, "[i]n the Ninth Circuit, scienter may be established by demonstrating that the defendant acted recklessly." Ponce v. S.E.C., 345 F.3d 722, 729 (9th Cir. 2003). In turn, recklessness can be satisfied by pleading a "highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Ponce at 729 (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-69 (9th Cir. 1990)).

In evaluating the sufficiency of allegations of scienter, the court should look to whether the allegations, collectively, give rise to a strong inference of scienter: [t]he inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. Tellabs, at 323.

In evaluating the strength of inferences of scienter, the Tellabs court held: "The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences." . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of

scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Tellabs, at 323.

Plaintiff has adequately pled the elements of a claim pursuant Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 in paragraphs 100 through 130, and paragraphs 166 through 198 of the SAC.

Plaintiff has laid out Material misrepresentation or omission by the defendants explicitly in section "FACTS PERTAINING TO SECURITIES FRAUD" of the SAC.

Plaintiff has sufficiently met his Rule 9(b) burden of pleading the "who, what, when and how" of each false statement in paragraphs 166 through 198 of the SAC.

Plaintiff has pled sufficient facts in paragraphs 207 through 209 to show how the material misrepresentation caused him to purchase the security.

Defendants refer to two emails dated August 27, 2012 and September 28, 2012, and argue that Plaintiff could not have relied on the misrepresentation that USIIC was a Regional Center when he made the investment because he knew the pending status. Defendants ignore the facts that these emails **were written in English and Plaintiff could not read and understand them**. Defendants intended to **__CONCEAL__** the fact that the regional center application was pending by only addressing this topic in English because Plaintiff could not read English. When Plaintiff raised questions about the application, Defendants reassured him by providing explanations in Farsi. The email dated August 27, 2012, written in English, stated that USIIC's Regional Center status was pending, but that USIIC would manage his investment for a direct EB-5 green card application. On the same day, Plaintiff received an email, written in Farsi, from Khazen, in which stated: "Regarding the approval of the company, due to some confidential organizational reasons, in case you absolutely need it, the company's attorneys need to be contacted and this document will be sent to you in a confidential E-mail. **Or,** after your arrival, in a face to face meeting with the company's attorney you can receive this document. **Otherwise,** in a week a copy of this approval, confidential issues omitted, **will be posted on the company's website.**" [1] The message says that Plaintiff could receive the information about the regional center approval

---

[1] Please note that bold and underlining have been added to the original.

via a secure email message or when he arrived in the United States. <u>This email clearly gives the impression that **the regional center approval had already been obtained** and would be delivered through a confidential email or that within a week it would be posted on the company's website.</u> This message, written in Farsi, did not explain that the USIIC's regional center application was pending. The message directly contradicted the previous message that Plaintiff received in English, in which Khazen acknowledged that the application was pending.

In regards to that email dated September 28, 2012, Defendants ignore the fact that David Raft's email was written in English. Attorney Raft sent the email to <u>Khazen, Karimaneh and Plaintiff</u> following the meeting dated September 20, 2012. This email clearly indicates that Defendants had done nothing to pursue Plaintiff's EB-5 visa application. Instead they had misappropriated his investment funds. This email was <u>written in English</u>. In this email, David Raft stated:

*"Dear Mr. Mohebbi, Ms. Karimaneh and Ms. Khazen*

*It was a pleasure to meet with you all the other day...[T]he documentation provided to date does not establish that Mr. Mohebbi has invested into a business entity which may qualify him for approval under the EB-5 category... [F]rom our meeting, Armineh and I thought that Mr. Mohebbi had invested in one of the projects that USIIC was involved in. Please clarify New Commercial Enterprise which is the subject of Mr. Mohebbi's investment. We will need a complete set of the Articles for the entity, including any relevant subscription agreements, etc. If Mr. Mohebbi is investing into an entity which will be a regional center, we will need to await the USCIS approval of the regional center application before we can actually file the I-526 petition. <u>As we understand</u> the organizations mission plan, its goal is to purchase and stabilize failing banks around the United States. We understand that Federal law prohibits foreign nationals from investing in such banks. <u>Please clarify this if our understanding is incorrect.</u> As such, we would <u>assume</u> that Mr. Mohebbi is precluded from actually purchasing a direct interest in one of the banks which would be the subject of an investment by a Regional Center and that he must await the approval of the Regional Center filing before he can submit an I-526 to the USCIS...*

*[F]inally, I have discussed the issue with respect to the <u>Engagement Letter</u> with David Hirson. He indicated that the initial Engagement Letter was provided as a sample of what the legal fees would be if Mr. Mohebbi were to have made his investment into the **<u>Regional Center</u>**.*"[2]

This email clearly indicates that Fragomen immigration law firm had provided the client-attorney engagement letter under the impression that Plaintiff invests in a regional center.

This email indicates that Defendants had misinformed Plaintiff and attorney Raft that federal law prohibits foreign nationals from investing in distressed banks and attorney raft is trying to clarify the accuracy of the statement.[3]

Section 5 of the engagement agreement dated July 22, 2012, bound Defendants to enter Plaintiff into the **USIIC Regional Center-I or-II**. Defendants concealed the facts that the USIIC's regional center application was still pending with the USCIS and disregarded attorney Raft's instruction and urged Plaintiff to sign the subscription agreement dated October 3, 2012. Because Defendants had already converted the Plaintiff's investment funds, they could not provide the USIIC I LP's Business Bank Account statement or confirmation letter from the bank to demonstrate receipt of funds from Plaintiff's account in Dubai to USIIC I LP's business account. On August 28, 2012, Defendants sent an email, written in Farsi, to Plaintiff in which stated: "*I was talking to Ms. Mahnaz. She said that, regarding the investment, apparently you were initially short of funds and Ms. Mahnaz has personally undertaken the responsibility to compensate for the shortness of funds in order for your file to move forward faster.*" (SAC ¶ 101)

In paragraphs 199 through 206, Plaintiff has adequately pled the "scienter."

In paragraphs 212 and 213, Plaintiff has adequately pled the "Loss Causation."

**D. Plaintiff Has Adequately Pled Advisor Act Section 203(a) Violations**

The Investment Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). Any

---

[2] Note that bold and underlining have been added to the original.
[3] There is no Federal law which prohibits foreign nationals from investing in a distressed or federally insured bank.

person meeting this definition, and who has not registered with the SEC as an investment adviser, runs afoul of the act. Defendants acted as "investment advisers" as defined by the Act, but had not registered as investment advisers with the Securities and Exchange Commission. The remedy for violations of the Advisers Act is rescission of the underlying advising agreement.

Defendants as part of their scheme had plaintiff sign "Engagement Agreement" dated July 22, 2012. <u>The agreement was executed in Dubai and at that time Plaintiff did not reside in the state of California</u>. Clause 1 of the agreement, describes the "IDENTIFICATION OF POTENTIAL INVESTMENT", as follow: "*i) Review potential investments provided by **its** real estate, advisors, attorneys, bankers and investment managers in the selection of investment opportunities.*" Also Section 5 of the engagement agreement described the "compensation" as follow: "*i) In consideration of and as compensation for the services, the EB-5 Immigrant Investor hereby agrees to pay USIIC a $59000.00 administration fee for i) entering the EB-5 Immigrant Investor into USIIC Regional Center-I or-II's proposed commercial enterprise **<u>investment in a distressed Community or Private Bank</u>** ...*" Also Defendants defined the USIIC as an "*EB-5 organization assisting VIPs, entrepreneurs, and successful professionals from around the world **<u>to invest in the recapitalization of U.S. Community and Private Banks</u>** ...*" Defendants, by engaging in the conduct described above, directly or indirectly, engaged in the business of advising clients, for compensation, as to the value of securities and as to the advisability of <u>investing in</u>, purchasing, or selling securities and, therefore, were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). Defendants have never been registered with the Commission as investment advisers.

By reason of the foregoing, Defendants, directly or indirectly, violated, Section 203(a) of the Advisers Act, 15 U.S.C. § 80b-3(a). As a result of violations, plaintiff is entitled to rescind the above-described agreement.

**E. Plaintiff Has Adequately Pled the Cause of Action for California Corporations Code § 25110 Violation**

Section 25110 "makes it illegal to sell an unqualified security unless the security itself" is exempt from state registration and qualification requirements. People v. Simon, 9 Cal. 4th 493, 499 (1995). At the time the Defendants sold these securities to Plaintiff, the securities were subject to qualification and were not exempt from qualification." The securities in question are not "covered securities."

Plaintiff has pled facts sufficient to show that the offered securities were not covered securities and thus subject to the requirements of state registration requirements as provided in Corporations Code § 25110.

**F. Plaintiff Has Sufficiently Pled the Cause of Action for California Corporations Code § 25401 Violations**

California Corporations Code section 25401, makes it illegal to "offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made . . . not misleading."

Having alleged facts sufficient to show a claim for fraud under Section 10b-5, as discussed above, Plaintiff also has alleged facts sufficient to support his § 25401 claims.

**G. Plaintiff has pled the Ninth, Tenth, Eleventh and Twelfth causes of action (the "Fraud Causes of Action") with particularity.**

To prevail on a fraud claim, a Plaintiff must establish the following elements: (1) that the defendant made a material misrepresentation; (2) there was knowledge of falsity; (3) defendant intended to defraud or induce reliance; (4) plaintiff actually and justifiably relied on the misrepresentation; (5) and damages. Lazar v. Super. Ct., (1996) 12 Cal. 4th 631, 638; Hackethal v. Nat'l Cas. Co., (1987) 189 Cal. App. 3d 1102, 1111. Pursuant to Federal Rule of Civil Procedure, Rule 9(b), fraud must be plead with particularity so as to give notice to the defendants of the specific fraudulent conduct against which they must defend. Claims of fraud must be "accompanied by the who, what, when, where, and how of the misconduct alleged." Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiff has complied with Rule 9(b)'s heightened pleading requirements to give notice to Defendants of the context of each alleged misrepresentation. (See discussion above at IV, A, B, C, D.)

Plaintiff has adequately pled his own justifiable reliance on any alleged fraudulent or intentional misrepresentation. (See discussion above at V, C.)

a. Plaintiff Has Pled the Ninth Cause of Action for Fraud in the Inducement with Particularity

California Code of Civil Procedure § 1856 subdivision (f) establishes a broad exception to the operation of the parol evidence rule: "Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue."

Plaintiff relied on misrepresentations on the Defendants' website, promotional materials, particularly the described "step-by-step of the EB-5 visa process" and entire previous negotiations, and was led to believe that he was entering into an agreement with an entity which had been approved by USCIS as a "regional center." Plaintiff has pled sufficient facts to show that Plaintiff signed the engagement agreement only because he had been led to believe that the USIIC was an approved regional center. Khazen concealed the pending status with intention to defraud because she knew that Plaintiff would not sign the agreement if he knew the truth. Defendants undertook to explain the contracts to Plaintiff in Farsi. Having done so, they were obliged to do so accurately. (Section 552 of the Restatement Second of Torts)

Plaintiff lacked a reasonable opportunity to learn of the written terms, and therefore reasonably relied on the Defendant's misrepresentations. If the party lacked a reasonable opportunity to learn of the contract's written terms, then the contract may be void, making the issue of fraud one for the court.

b. Plaintiff Has Pled the Tenth Cause of Action for Fraud in the Execution with Particularity

Fraud in the execution of a contract occurs when "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void." Ford v. Shearson Lehman American Express, Inc., 180 Cal. App. 3d 1011, 1028 (1986); Rosenthal, 14 Cal. 4th at 415-16. "Every California case which has addressed the issue has concluded that fraud in the [execution] is

sufficient to avoid an arbitration clause." Rice v. Dean Witter Reynolds, Inc., 235 Cal. App. 3d 1016, 1025 (1991) (overruled on other grounds) (citations omitted).

In this case, the engagement agreement and the arbitration provision contained in it is void because the entire contract was fraudulently executed. Enforcing the arbitration provision in this instance would contravene the laws and public policy of this state because Plaintiff was deceived by fraud so fundamental that he did not consent to the actual document he signed. Moreover, given Plaintiff's inability to read the contract, and his reasonable trust in Defendants, Plaintiff had no reasonable opportunity to learn the true terms of the document. See Rosenthal, 14 Cal. 4th at 425 (setting forth two-pronged test for fraud in the execution).

The touchstone of a fraudulent execution claim is the lack of mutual assent. See Rosenthal, 14 Cal. 4th at 415.

Plaintiff was misled by Defendants as to the nature of the document which Defendants were requiring Plaintiff to sign in that the Defendants identified the USIIC as an approved Regional Center and did not afford Plaintiff an opportunity to review same. During this explanation the Defendants neither mentioned the arbitration clause nor the pending status of the application for the regional center.

Defendants' efforts to characterize this case as one of fraudulent inducement of the contract - as opposed to its fraudulent execution - must fail. In Rosenthal, the Court held that "to make out a claim of fraud in the execution... plaintiffs must show their apparent assent to the contracts - their signatures on the... agreements - is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed." Rosenthal, 14 Cal. 4th at 425. The Court refused to enforce the arbitration clause where the plaintiffs submitted declarations stating that the defendant misrepresented the plaintiffs' investments in a mutual fund as a "safe investment with a high return" and as "not at all like stocks," and never mentioned the word "arbitration" or that the plaintiffs were giving up their legal rights.[4] As a result, these plaintiffs further stated they did not understand they were buying mutual funds or agreeing to arbitration. Id. at 427, 429. Significantly, the plaintiffs in Rosenthal knew they were purchasing investments, but were

deceived as to the exact nature of their investment - deception the court found so fundamental that it supported the plaintiffs' claims of fraud in the execution.

c. Plaintiff Has adequately Pled the Eleventh Cause of Action for Fraud in Connection with the Investment Agreement

(See discussion above at V, C.)

d. Plaintiff Has Adequately Pled the Twelfth Cause of Action for Fraud in Connection with the December 18, 2012 Agreement[4]

The document misrepresented that USIIC had purchased 2,285,750 shares in Tri-Valley Bank for $2,285,750 ($1 per share). This statement was materially false and misleading and was made with intent to defraud. Defendants had purchased the Tri-Valley Bank shares for less than $0.35 shares.

The document claims that each share was valued at $1. However, during this time period shares in Tri-Valley Bank traded for an average value of $0.35. Exhibit 29 of SAC clearly shows that during August 1, 2012 through December 18, 2012, the value of the shares never exceeded 65 cents. Furthermore, a letter dated August 2, 2012 from CEO of Tri-Valley Bank to its shareholders evidences that there was an offer of $0.35 per share. The letter indicates that the private placement was to close on August 31, 2012. (SAC EXHIBIT 25)

Paragraph 6 of the agreement states that USIIC LLC has formed the Bancorp in order to advance the process of Plaintiff's EB-5 visa application. This paragraph was false and misleading because Defendants knew that Plaintiff had to invest another $1,000,000.00 in the Bancorp in order for him to be eligible for direct EB-5. (SAC 49)

Defendants registered dba USIIC Bancorp with the Santa Clara County Clerk-Recorder's Office on October 22, 2012. (EXHIBIT 26) USIIC Bancorp is a dba of VAAM & ASSOCIATES, INC. VAAM & ASSOCIATES, INC. incorporated under the laws of the State of California in 1999. (EXHIBIT 27) Defendants registered dba USIIC Bancorp with intent to evade the U.S. Immigration law. U.S. immigration law requires an investment of $1,000,000.00 in a "new

---

[4] The attached copy of this agreement is executed by both parties. See IV, C.

commercial enterprise," managed and controlled by the EB-5 visa applicant, however VAAM & ASSOCIATES, INC. was not a "new commercial enterprise."

Paragraph 10 of the agreement stated that Plaintiff would receive monthly reports detailing the status of his investment in Tri-Valley Bank. Paragraph 10 of the agreement was materially false and misleading and was made with intent to defraud. Defendants never intended to produce any report to Plaintiff and Plaintiff never received a single report from Defendants.

**H. Plaintiff Has Sufficiently Pled the Cause of Action for Lanham Act Violations**

The elements for a false advertising claim under Section 43(a) of The Lanham Act codified as 15 U.S.C. §1125(a) are: (1) a false statement of fact by Defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) Defendant caused its false statement to enter interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the false statement, either by a direct diversion of sales from itself to defendant or by a lessening of the good will associated with its products.

In sections "Facts Pertaining to the Lanham Act" and "Misrepresentations" of the SAC, Plaintiff has adequately pled all elements of the false advertising claim under Section 43(a) of The Lanham Act.

Plaintiff has pled facts sufficient in paragraphs 229 and 230 to show that Defendants have advertised false statements of fact in a commercial advertisement about their products and services;

In paragraphs 231 through 233, Plaintiff has pled enough facts to show that the statement actually deceived him. In paragraphs 234 and 235, Plaintiff has pled that the deception was material, to influence his decision in signing the "engagement agreement, dated July 22, 2012" and "subscription agreement, dated October 3, 2012" to purchase securities. Plaintiff has sufficiently pled facts sufficient to show that Defendant caused the false statements to enter interstate commerce through their website; and Plaintiff has pled fully in sections "Facts

Pertaining to the Lanham Act" and "Misrepresentations" of the SAC, in details how Plaintiff has been injured.

**I. Plaintiff Has Adequately Pled the Fifteenth, Sixteenth and Seventeenth Causes of Action for Breach of Contract.**

1. Breach of the Engagement Agreement.

Plaintiff receives "no consideration". Defendants represented that Plaintiff would be entered into USIIC Regional Center-I or II. This promise was never performed and the circumstances demonstrate that when it was made there was no intent to perform it. In fact, U.S. Citizenship and Immigration Services has denied both USIIC's regional center applications. (SAC 93)

2. Breach of the Partnership Agreement

Under the Uniform Limited Partnership Act, a limited partner has the right to receive a share of the partnership profits and a return of his or her contribution, and has the same rights as a general partner to [Corp. Code § 15510]: (1) have the partnership books kept at the partnership's principal place of business, and at all times to inspect and copy them; (2) receive on demand information of all things affecting the partnership; (3) receive on demand a formal account of partnership affairs, whenever just and reasonable under the circumstances.

3. Breach of the December 18, 2012 Agreement Written in Farsi

Paragraph 10 of the agreement stated that Plaintiff would receive monthly reports detailing the status of his investment in Tri-Valley Bank. Defendants have never produced any report to Plaintiff.

**J. Plaintiff Has Pled Adequately the Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing**

The "Agreement dated December 18, 2012" contains an implied covenant of good faith and fair dealing requiring that neither party do anything to deprive the other of the benefits of the contract. This covenant imposes on each party the duty to do everything the contract presupposes that party will do to accomplish the purpose of the contract. Paragraph 10 of the agreement stated that Plaintiff would receive monthly reports detailing the status of his investment in Tri-Valley Bank. Defendants have never produced any report to Plaintiff.

**J. Plaintiff Has Adequately Pled the Cause of Action for California Business and Professions Code Sections 17200 and 17500 Violations**

The Court Previously granted the cause of action for false advertising under § 17500. California Business and Professions Code Section 17200 prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Business and Professions Code Section 17500. Section 17500 PROHIBITS any deceptive, false and misleading advertising. Plaintiff has pled facts sufficient to show that Defendants have engaged in false and misleading advertising.

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice. Plaintiff's UCL claim is based on the same factual allegations as California Business and Professions Code Section 17500 and his Lanham Act violation claim. Thus, having alleged facts sufficient to show both violation of California Business and Professions Code Section 17500 and Lanham Act, as shown above, Plaintiff also has alleged facts sufficient to support his UCL claims.

**K. Plaintiff Has Pled Adequately the Cause of Action for Conversion**

The Court Previously granted the cause of action for conversion.

**L. PLAINTIFF HAS PLED ADEQUATELY CAUSE OF ACTION RESCISSION**

Defendants offered and sold securities to Plaintiff using untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Defendants as part of their scheme had plaintiff sign documents called agreements. Plaintiff was told the documents Plaintiff was signing consisted of standard language expressing or embodying the misrepresentations. Defendants intended for Plaintiff to rely on the misrepresentations instead of the onerous, contradictory, misleading, and fraudulent provisions of the Agreements. One of the documents in question contained a restrictive arbitration clause. Plaintiff seeks a finding of rescission and that the clause was invalid ab initio due to fraud, and its use, which was not to memorialize an agreement but to perpetuate a criminal enterprise.

**M. Plaintiff Has Adequately Cause of Action for Accounting and Constructive Trust**

An action for an accounting is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice...." Verdier v. Super. Ct. in and for City & County of San Francisco, 88 Cal.App.2d 527, 530, 199 P.2d 325 (1948). A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due to plaintiff that can only be ascertained by an accounting." Teselle v. McLoughlin, 173 Cal.App.4th 156, 179, 92 Cal.Rptr.3d 696 (2009). Defendants defrauded Plaintiff to enter into the engagement agreement dated July 22, 2012 and urged him to transfer $1085000 into the escrow account. Despite promising not to comingle and convert the investment funds, Defendants converted the investment funds for their own benefit. Defendants fraudulently caused Plaintiff to enter into two subsequent agreements. Defendants took over the business and assets of the partnership; therefore they have a sufficient relationship to Plaintiff, to require an accounting of the partnership business.

"A cause of action for constructive trust is not based on the establishment of a trust, but consists of fraud, breach of fiduciary duty or [an]other act which entitles the plaintiff to some relief." Michaelian v. State Comp. Ins. Fund, 50 Cal.App.4th 1093, 1114, 58 Cal.Rptr.2d 133 (1996). The "partnership agreement" and the "December 18, 2012, agreement" created a fiduciary duty which Defendants owed Plaintiff. Defendants breached a fiduciary duty owed Plaintiff by converting Plaintiff's investment funds in the escrow account belonging to be placed either in their own individual name or into corporations wholly owned by them and treating the aforesaid assets belonging to Plaintiff as their own personal property.

Defendants' Motion to Dismiss Improperly Addresses the Evidence Rather than the Pleadings and Must Be Denied

Defendants' motion attacks the evidence rather than the pleadings. Arguments relating to the evidence are inappropriate in a motion to dismiss as allegations in the complaint must be taken as true. In deciding a motion for failure to state a claim pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), the Court must accept the pleaded facts as true and view them in the

light most favorable to the Plaintiff. Parks School of Business, Inc. v. Symington, 51 F. 3d 1480, 1484 (9th Cir. 1995)

Further, a motion to dismiss only tests the sufficiency of the pleading and evaluates whether the allegations sufficiently place Defendants on notice of its alleged misconduct. Iqbal, 556 U.S. at A plaintiff is not required to set out in detail the facts upon which he bases his claim . . . only a short and plain statement of the claim is required. Dioguardi, 139 F.2d at 774. Defendants' arguments relating to the evidence, therefore, must not be entertained by this Court.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff, Saeid Mohebbi, respectfully requests that this Court deny Defendants' motion in it's entirely, or, in the alternative, grant Plaintiff leave to file an amendment to the operative pleading.


Dated: August 8, 2014                                    /s/ Aria Vatankhah

                                                        Attorney for Plaintiff

                                                        Saeid Mohebbi