UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAEID MOHEBBI, <br> Plaintiff, <br> v. <br> MAHNAZ KHAZEN, et al., <br> Defendants. | Case No. 13-cv-03044-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF STIPULATED JUDGMENT** <br><br> [Re: ECF 129-1] |

Before the Court is Plaintiff Saeid Mohebbi's Application for Entry of Stipulated Judgment Pursuant to Comprehensive Settlement, Release and Security Agreement ("Application"). Application, ECF 129-1. Defendants Mahnaz Khazen, Michael Shadman and U.S. Immigration Investment Center, LLC (collectively, "Defendants") oppose Plaintiff's Application. Opp'n, ECF 135. The present Application concerns whether Plaintiff is entitled to entry of the stipulated judgment arising out of Defendants' failure to make timely payment under the parties' settlement agreement and what monetary award Plaintiff would be entitled.

The Court held a hearing ("the Hearing") on Plaintiff's Application for Stipulated Judgment on December 13, 2018. The Court has considered the arguments presented at the Hearing and in the briefing, as well as the evidence submitted and applicable law. For the reasons that follow and as discussed at the Hearing, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Application for Stipulated Judgment.

**I.　BACKGROUND**

**A.　General Background**

The underlying facts of this case are well-known[1] to the Court and the parties and such

---

[1] For example, see the Court's prior orders at ECF 64 and ECF 81.

United States District Court
Northern District of California

facts not relevant to the present Application for Stipulated Judgment are not restated here. On July 11, 2014, Plaintiff Saeid Mohebbi ("Plaintiff" or "Mohebbi") filed his Second Amended Complaint ("SAC") against Defendants Mahnaz Khazen, Michael Shadman, Violet Parvarandeh, Pirooz Parvarandah, and Stacey Conti, as well as U.S. Immigration Investment Center LLC ("USIIC"), USIIC LLP, and USIIC I LP, asserting twenty-two causes of action, including claimed violations of federal and state securities laws, fraud, false advertising, conversion, unjust enrichment, and common law torts. SAC, ECF 66. The claims arose out of a contractual investment relationship between the parties. Plaintiff alleged that, in exchange for Defendants' assistance in applying for a federal EB-5 immigration visa, he invested over $1 million in a partnership. *See, e.g.*, SAC ¶ 38. Plaintiff alleged that Defendants fraudulently induced this investment and failed to comply with their obligations pursuant to the contract, and sought rescission of the agreement and damages, including punitive damages, and attorneys' fees. *See generally* SAC.

### B. Arbitration Award

On December 4, 2014, the Court granted in part Defendants' motion to compel arbitration and stayed the remaining claims pending completion of arbitration. *See* ECF 81. Arbitration subsequently commenced in the International Court of Arbitration of the International Chamber of Commerce before the Hon. James Ware (Ret.). *See generally Arbitration Partial Award*, Ex. 2 to Holland Decl., ECF 129-3. On February 28, 2018, Judge Ware issued a Partial Award declaring "[Plaintiff] Saeid Mohebbi to be the prevailing party as against [Defendants] Mahnaz Khazen, Michael Shadman and [U.S.] Immigration Investment Center LLC." *Id.* ¶ 335. Judge Ware ruled that Defendants Khazen, Shadman, and USIIC were liable and awarded Mohebbi both compensatory and punitive damages. *See id.* ¶¶ 326–29. Pre-award interest, attorney's fees and costs were reserved for the Final Award. *Id.* ¶ 337. Judge Ware's findings included, *inter alia*, that Defendant Khazen "made intentionally false representations to Claimant Mohebbi," created "fake" government documents to illegally receive funds out of Iran, "creat[ed] a false paper trail," made a variety of "documents [that] were all fictitious . . . to cover up [multiple] misrepresentations," engaged in a "cover-up" through the creation of a "fictitious investment," and

"deliberately concealed from [] Mohebbi her actual use of his EB-5 funds." *See id.* ¶¶ 148–49, 210, 246, 248.

### C. Settlement Agreement and Defendants' Failure to Pay

Prior to issuance of any Final Award, the parties[2] entered into a Comprehensive Settlement, Release, and Security Agreement ("Settlement Agreement"), effective March 28, 2018. *See generally* Settlement Agreement, Ex. 2 to Holland Decl., ECF 120-1. The Settlement Agreement is governed by California law, *see id.* § 12, and conditionally resolves all disputes between the parties as alleged in this action or the arbitration proceeding, *see id.* § A–E, § 1. Pursuant to the agreement, Defendants Khazen, Shadman, and USIIC agreed "to pay or cause to paid to [] Mohebbi . . . by [] September 28, 2018, the discounted sum of **Three Million, Six Hundred Twenty Five Thousand Dollars and No Cents** ($3,625,000.00 U.S.) (the **'Settlement Amount'**)." *Id.* § 2.1 (emphasis in original). The Settlement Agreement further provides that the Court may "enter the Stipulated Judgment attached as Exhibit F [to the Settlement Agreement]" if the "full Settlement Amount, and all accrued interest, if any, is not paid with[in] the [] period specified." *See id.* § 5.1(b). The Settlement Agreement also provides that "[Plaintiff] may immediately foreclose on the security referred to [in the Settlement Agreement], which Defendants shall not oppose, directly or indirectly," if the full Settlement Amount is not paid within the period specified. *See id.* § 5.2.

Defendants made an initial settlement payment of $500,000 to Plaintiff on June 11, 2018. *See* Holland Decl. ¶ 54, ECF 129-3. The parties agree that no additional payments were made by the deadline of September 28, 2018, but dispute who is at fault thus what actions should result from Defendants' failure to pay. *See* Application at 1, ECF 129-1; Opp'n at 6–7, ECF 135. On October 19, 2018, Defendants made an additional settlement payment of $1,212,350 to Plaintiff. *See* Benning Decl. ¶ 6, ECF 136. The Settlement Agreement includes terms setting interest rates and accrual on any outstanding amount on or after June 12, 2018. *See* Settlement Agreement

---

[2] Defendant USIIC LLP is not listed in the Settlement Agreement; however, Plaintiff represents that claims against all parties to this lawsuit are covered by the Settlement Agreement, *see* Application at 1, ECF 129-1, which Defendant does not dispute.

3

§ 2.1(c)–(g). The Settlement Agreement also states that if the full Settlement Amount is not paid by the deadline of September 28, 2018, Plaintiff may apply to the Court to enter "the Stipulated Judgment attached [*see* Exhibit F to the Settlement Agreement] . . . against Defendants [in] the amount of 120% of any unpaid portion of the Settlement Amount that is then due and owing at the time of default." *See* Settlement Agreement § 5.1(b).

### D. On-going Litigation

On September 29, 2018, the day after the settlement payment deadline, Plaintiff served Defendants with a Notice of Default and indicated that Plaintiff would file an application for stipulated judgment in accordance with the terms of the Settlement Agreement if Defendants did not "cure the default" within "four court days" as provided by the procedure for entering stipulated judgment. *See* Ex. 54 to Holland Decl., ECF 129-3. Defendants did not make any additional payments within this timeframe, but instead filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Application for TRO") on October 3, 2018. *See* Application for TRO, ECF 112. Defendants' Application for TRO sought to enjoin Plaintiff from filing an application for stipulated judgment; enjoin Plaintiff from foreclosing on the properties listed as "security" in § 3 of the Settlement Agreement; obtain an order to show cause why a preliminary injunction should not issue; and obtain a finding of damages for breach of contract and breach of the implied covenant of good faith and fair dealing, and judicial declaration that § 5.1 of the Settlement Agreement is void and unenforceable. *See generally id.* The properties listed as "security" are located at 143 Bay Place and 2332 & 2336 Harrison Street, Oakland, California ("The Properties"). *See id.* § 3.

On October 10, 2018, the Court denied Defendants' Application for TRO in its entirety. *See* Order Denying Defendants' Application for TRO, ECF 130. Now before the Court is Plaintiff's Application for Entry of Stipulated Judgment Pursuant to Comprehensive Settlement, Release and Security Agreement ("Application"). Application, ECF 129-1.

## II. LEGAL STANDARD

Under federal law, courts possess inherent power to enforce a settlement agreement pertaining to an action pending before it. *See Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir.

4

1978). "The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." *Id.* In other words, the district court "ha[s] the authority to approve and enforce [a] settlement [agreement]" in a case pending before it. *See Waits v. Weller*, 653 F.2d 1288, 1291 n.4 (9th Cir. 1981); *see also Sohn v. Wells Fargo Bank*, 2015 WL 13688050, at *2 (N.D. Cal. Oct. 13, 2015). Courts possess equivalent power under California law. "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." Cal. Civ. Proc. Code § 664.6. Under § 664.6, a court may "entertain challenges to the actual terms of the stipulation, that is, whether there actually was a settlement . . . . [and] interpret the terms and conditions to settlement." *Fiore v. Alvord*, 182 Cal. App. 3d 561, 565–66 (1985).

## III. DISCUSSION

The parties do not dispute that settlement occurred and is binding. Instead, the parties dispute whether Plaintiff is entitled to Stipulated Judgment arising out of Defendants' failure to make timely payment under the Settlement Agreement and to what amount of damages Plaintiff would be entitled. *See* Application at 1–2, ECF 129-1; Opp'n at 1, ECF 135. Specifically, Plaintiff requests that the Court enter judgment for Plaintiff pursuant to the parties' Stipulated Judgment form (Ex. F to the Settlement Agreement), which includes confirming Judge Ware's Arbitration Award and awarding Plaintiff an additional 20% of the amount outstanding. *See* Application at 1–2; Ex. F to Settlement Agreement at 1. Defendants object to the entry of Stipulated Judgment on three grounds: (1) that Plaintiff's alleged breaches of the confidentiality clause of the Settlement Agreement caused Defendants to default; (2) that the Arbitration Award should not be confirmed because it was not finalized; and (3) that the additional 20% provided in the Stipulated Judgment form is void and unenforceable as a liquidated damages "penalty provision." *See* Opp'n at 1.

5

The Court discusses in turn each objection raised by Defendants. For the reasons stated below, the Court finds that Defendants' first two objections are without merit but agrees that the provision granting Plaintiff an additional 20% of the amount outstanding is void and unenforceable. Accordingly, Plaintiff's Application for Stipulated Judgment is GRANTED IN PART and DENIED IN PART.

### A. Plaintiff's Alleged Breaches of Confidentiality

Defendants contend that "Plaintiff breached the confidentiality clause in the [Settlement] Agreement" and that "[c]onsequently, Defendants have been unable to sell The Properties and acquire liquid capital to tender payment to Plaintiff . . . rendering [Defendants] in default under the [Settlement] Agreement." *See* Opp'n at 8, 9. Plaintiff argues that "[Plaintiff] has not breached the Settlement Agreement's confidentiality clause and Defendants have offered no evidence of any actual confidentiality breaches" and that regardless "any alleged confidentiality breaches are irrelevant, as Defendants' performance is not excused." *See* Plaintiff's Memorandum at 10, ECF 129-2; *see also* Reply at 1–6, ECF 144. As discussed below, the Court agrees with Plaintiff.

First, Defendants' obligation under the Settlement Agreement to make timely payment of the Settlement Amount is not contingent upon sale of The Properties. Instead, the Settlement Agreement provides that The Properties are "security until payment [is made] to [Plaintiff] of the full Settlement Amount and all accrued interest [] **or** [] shall be sold by Defendants . . . to generate funds." Settlement Agreement § 3 (emphasis added); *see also id.* § 3.3. Thus, while Defendants may sell The Properties and use the proceeds to cover the Settlement Amount, Defendants are bound by the Settlement Agreement to pay the Settlement Amount irrespective of sale of The Properties. In other words, mere non-sale of The Properties does not relieve Defendants of their duty under the Settlement Agreement to make timely payment.

Second, Defendants' allegation that Plaintiff breached the confidentiality provisions of the Settlement Agreement is based primarily on the declaration of Defendant Khazen, *see* Opp'n at 6–11 (extensively citing Khazen Decl., ECF 137), which is rife with inadmissible hearsay. For example, Khazen alleges that Plaintiff violated the confidentiality provisions based on what a first individual told a second individual who then told Khazen. *See* Khazen Decl. ¶ 12. Khazen offers

numerous additional double hearsay or hearsay statements that are likewise inadmissible. *See, e.g.*, *id.* ¶¶ 19–21. Thus, the Khazen Declaration is not evidence that Plaintiff breached the confidentiality provisions of the Settlement Agreement or that the alleged breaches caused Defendants to default.

Third, even if Plaintiff did breach the confidentiality provisions, the Settlement Agreement provides liquidated damages in the event "a Party breaches th[e] confidentiality provision" and provides for no other damages or relief. *See* Settlement Agreement § 4.2. Therefore, the exclusive remedy for breach of confidentiality is liquidated damages of "[$37,500.00] per breach . . . if such an impermissible disclosure is proved." *Id.* Here, Defendants have not proven that Plaintiff breached the confidentiality provisions of the Settlement Agreement. Other than the Khazen Declaration, Defendants point to a "Notice of Conditional Settlement" and "Notice of Lien" disclosed by Plaintiff in a state court action. *See* Opp'n at 9. However, these documents are simply ECF 105 and ECF 102, respectively, in the instant action. ECF 105 was publicly filed by Plaintiff and Defendants jointly and ECF 102 was publicly filed by a third party and not objected to by Defendants. Regardless, even if Defendants did show that Plaintiff breached the confidentiality provisions, Defendants' failure to make timely payment would not be excused as a remedy for such breach. Accordingly, Defendants' objection based on Plaintiff's alleged breach of the confidentiality provisions fails. Defendants also object to Stipulated Judgment on grounds that Plaintiff breached the implied covenant of good faith and fair dealing; however, this alleged breach is based on Plaintiff's alleged breach of confidentiality, *see* Opp'n at 10–11, and thus fails for the same reasons.

In sum, the Court rejects Defendants' contention that Plaintiff's alleged breach of confidentiality precludes Stipulated Judgment for Plaintiff.

### B. Confirmation of the Arbitration Award

Defendants argue that Plaintiff's request to confirm Judge Ware's Arbitration Award should be denied because "[o]n March 16, 2018, Defendants filed [a] Correction, requesting clarification and resolution on several significant portions of the Award, including the Arbitrator's conflicting findings of fraud and breach of contract." *See* Opp'n at 14. This argument is without

merit. As pointed out by Plaintiff, *see* Reply at 11, Defendants affirmatively withdrew their request for a "Correction" of the Arbitration Award on April 26, 2018, *see* Ex. 41 to Holland Decl., ECF 129-3. In addition, confirmation of the Arbitration Award is a term of the Stipulated Judgment form (Ex. F to the Settlement Agreement) that Defendants' approved on March 28, 2018, as part of the Settlement Agreement. *See* Ex. F to Settlement Agreement at 1. Accordingly, the Court grants Plaintiff's request to confirm the Arbitration Award.

### C. Provision for an additional 20% in Damages

Defendants contend that § 5.1(b) of the Settlement Agreement providing for "the amount of 120% of any unpaid portion of the Settlement Amount that is then due and owing at time of default"[3] is a "penalty provision" in violation of California Civil Code § 1671. *See* Opp'n at 11. Plaintiff argues that Civ. Code § 1671 does not void the 120% provision because the Settlement Amount represents a "discounted" amount and that multiplying the "discounted" amount by 1.2 is therefore not an "unenforceable penalty" but instead a reflection of "the undiscounted Settlement Amount." *See* Plaintiff's Memorandum at 19–20. Plaintiff also argues that pursuant to Civ. Code § 1671(b) Defendants have the burden of proving the 1.2 multiplier is "unreasonable under the circumstances existing at the time the contract was made," *see id.* at 20 (citing Civ. Code § 1671(b)), and that Defendants have not met their burden, *see* Reply at 10. As discussed below, the Court finds that under California case law interpreting Civ. Code § 1671, Defendants have met their burden of showing "the provision was unreasonable under the circumstances existing at the time" the Settlement Agreement was entered, *see* Civ. Code § 1671(b), and therefore holds that the 120% provision in the Settlement Agreement is unenforceable.

Civil Code § 1671 provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Civ. Code § 1671(b). The California Supreme Court has held that a "liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b),

---

[3] And corresponding reference to this 1.2 multiplier in the Stipulated Judgment form.

8

if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998) (holding that the disputed provision was an unenforceable penalty for late payment of interest). Instead, "[t]he amount set as liquidated damages must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Id.* (internal quotation and citation omitted). Absent such a relationship, "a contractual clause purporting to predetermine damages must be construed as a penalty." *Id.* (internal quotation and citation omitted). "The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract." *Id.* (internal quotation and citation omitted).

Defendants argue that the 120% provision does not represent "an actual measure of damages" because "the liquidated damages clause remained at a constant 20%" during settlement negotiations despite fluctuations in proposed settlement amounts. *See* Opp'n at 13. The Court agrees. During settlement negotiations between the parties, the provision remained static at 120% of the outstanding amount, despite the proposed settlement amount fluctuating from $4,252,397.96 on February 28, 2018, to $3,625,000.00 on March 8, 2018. *See* Ex. 5 to Holland Decl., ECF 129-3; Ex. 7 to Holland Decl., ECF 129-3. This evidence demonstrates that the 120% provision is not in proportion "to the damages which may actually flow" from Defendants' failure to make timely payment, *see Ridgley*, 17 Cal. 4th at 977, but that instead the provision is simply a flat rate on top of the Settlement Amount. In other words, the amount of damages provided by the 120% provision varied with the proposed settlement amounts during negotiations, without consideration of "the range of actual damages that the parties could have anticipated would flow from [late payment]," *see Ridgley*, 17 Cal. 4th at 977.

Under the February 28, 2018 proposed settlement amount the 120% provision would provide $850,479.59[4] in liquidated damages for late payment, while under the March 8, 2018 proposed settlement amount the provision would provide $725,000.00[5] for identical breach. As

---

[4] $4,252,397.96 x 0.20
[5] $3,625,000.00 x 0.20

9

1  the Settlement Agreement separately provides for enhanced interest on any outstanding amount in
2  the event of late payment, *see* Ex. F to Settlement Agreement at 1–2, it is simply not plausible
3  Plaintiff would suffer nearly $125,000 in additional actual damages merely because Plaintiff had
4  obtained a larger settlement amount, *see Greentree Financial Group, Inc. v. Execute Sports, Inc.*,
5  163 Cal. App. 4th 495, 500 (2008) ("Damages for the withholding of money are easily
6  determinable—i.e., interest at prevailing rates.") (internal quotation and citation omitted) (finding
7  that additional charge for failure to make payment was an unenforceable penalty).

As *Greentree* makes clear, it is impermissible to use a measure of damages based on the entire underlying lawsuit to set liquidated damages for a narrower breach. 163 Cal. App. 4th at 499. The *Greentree* court explained that "the breach we are analyzing is the breach of the *stipulation*, not the breach of the *underlying contract*." *Id.* (emphasis in original). The *Greentree* court therefore found that because the measure of damages for breach of the *stipulation* was based on "damages in the underlying lawsuit," that measure of damages "bears no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the stipulation." *Id.* Here, like in *Greentree*, the 120% provision sets liquidated damages for late payment based solely on the outstanding amount due under the Settlement Agreement at the time of breach—the amount of damages in the underlying lawsuit—and likewise bears no reasonable relationship to actual damages the parties could have anticipated from late payment. Thus, the 120% provision possesses the "characteristic feature of a penalty." *Ridgley*, 17 Cal. 4th at 977.

Moreover, on February 28, 2018, Plaintiff referred to the proposed stipulated judgment for 120% of any outstanding amount as an "enforcement mechanism[] . . . for enforcement of the settlement agreement if the Settlement Amount is not timely and fully paid." *See* Ex. 5 to Holland Decl., ECF 129-3. This evidence supports Defendants' contention that the provision is a "penalty provision [that] operates to compel performance of an act and [] becomes effective only in the event of default upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach." *Ridgley*, 17 Cal. 4th at 977.

In support of his theory that the 120% provision represents a permissible "discounted" amount because multiplying the "discounted" amount by 1.2 reflects "the undiscounted Settlement

10

Amount," *see* Plaintiff's Memorandum at 19–20, Plaintiff cites two cases, *Jade Fashion & Co. v. Harkham Industries*, 229 Cal. App. 4th 635 (2014) and *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645 (1997). Neither is helpful to Plaintiff. *Jade Fashion* applied *Ridgley*'s "reasonable relationship to the range of actual damages" test and found that a $17,500 damages provision for late payment was permissible under Civ. Code § 1671 because the amount "was [not] an additional payment over and above any debt that was owed" but instead "the $17,500 was part of the [actual] $341,628.77 debt." *See Jade Fashion*, 229 Cal. App. 4th at 646, 649–50. In other words, the damages provision was not a penalty but simply reflected the amount that Jade Fashion "agreed to forebear [sic] on the immediate collection of the [d]ebt . . . on the condition that [Harkham Industries] make installment payments [on schedule]." *Id.* at 649. The *Jade Fashion* court emphasized that the $17,500 was part of the debt actually owed "in both the Agreement and the continuing guaranty." *Id.*

Here, unlike in *Jade Fashion*, the 120% provision in the parties' Settlement Agreement does not reflect forbearance of an amount owed under the Settlement Agreement, but instead an additional payment *on top of* the debt Defendants already owed Plaintiff. Accordingly, *Jade Fashion* does not stand for Plaintiff's proposition. Nor does *Weber*. *Weber* provides that if a liquidated damages clause "is otherwise valid, [the court] will uphold it even if the parties have referred to it as a penalty." 52 Cal. App. 4th at 656. Here, as discussed above, the Court finds that the 120% provision in the Settlement Agreement is not "otherwise valid" and thus *Weber* has no effect.

Finally, at the Hearing, Plaintiff referred to an additional case, *Krechuniak v. Noorzoy*, 11 Cal. App. 5th 713 (2017). The Court has reviewed *Krechuniak* and does not find it persuasive for Plaintiff. *Krechuniak* acknowledges *Ridgley*'s "reasonable relationship to the range of actual damages" test and concerns the appellate standard of review of the trial court's determination of whether a contract provision is an illegal penalty or an enforceable liquidated damages clause. *See Krechuniak*, 11 Cal. App. 5th at 714, 722. *Krechuniak* concluded that appellant was precluded from arguing on appeal that the settlement agreement contained an invalid penalty provision because appellant did not make that argument before the trial court. *See id.* at 726–27. Thus,

*Krechuniak* does not save the day for Plaintiff.

In sum, Plaintiff's Application for Stipulated Judgment is denied to the extent it incorporates the 120% provision set forth in § 5.1(b) of the Settlement Agreement.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Application for Stipulated Judgment is GRANTED IN PART and DENIED IN PART. It is hereby ordered that:

1. The Arbitration Award is confirmed.
2. Plaintiff is entitled to Stipulated Judgment (Ex. F to the Settlement Agreement) except the 120% provision set forth in the Stipulated Judgment form and the Settlement Agreement shall not apply.
3. The parties shall jointly provide a written stipulation and proposed judgment to the Court **no later than January 22, 2019**, that reflects the total amount owed to Plaintiff up to the date of the proposed judgment, including interest, in accordance with this Order.

**IT IS SO ORDERED.**

Dated: January 9, 2019

*/s/ Beth Labson Freeman*
BETH LABSON FREEMAN
United States District Judge

12